UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL H., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION** <br><br><br> Case No. 2:21-cv-00518 <br><br> Magistrate Judge Daphne A. Oberg |

 Plaintiff Michael H.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his application for disability insurance benefits under Title II of the Social Security Act.[2] The Administrative Law Judge ("ALJ") determined Mr. H. did not qualify as disabled.[3] Mr. H. argues the ALJ erred as a matter of law by: (1) failing to properly analyze the medical opinion evidence of Nancy Foster and Kerri Albanese, and (2) failing to support the residual functional capacity determination with substantial evidence.[4] The court[5] has carefully reviewed the record

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] 42 U.S.C. §§ 401–434; (*see also* Mot. for Review of Agency Action ("Opening Br.") 2, Doc. No. 22).

[3] (Certified Tr. of Admin. R. ("Tr.") 12–27, Doc. Nos. 16–17.)

[4] (Opening Br. 17–20, Doc. No. 22.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Doc. No. 9.)

1

and the parties' briefs.[6] Because the ALJ erred in his application of the supportability factor when reviewing Dr. Foster's opinions, the Commissioner's decision is reversed and remanded.

## STANDARD OF REVIEW

In social security appeals, the district court is not the factfinder.[7] Rather, this court reviews the ALJ's decision and the whole record to determine (1) whether substantial evidence supports the ALJ's factual findings, and (2) whether the ALJ applied the correct legal standards.[8] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[9]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[10] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[13]

---

[6] The appeal is determined on the written memoranda as oral argument is unnecessary. DUCivR 7-1(g).

[7] *Cf. Peplinski v. Saul*, 454 F. Supp. 3d 1119, 1124 (D. Kan. 2020).

[8] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

[9] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."[14]  Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[15]

The ALJ uses a five-step sequential evaluation to determine whether a claimant qualifies as disabled within the meaning of the Social Security Act.  Specifically, the ALJ considers whether:

1) the claimant is engaged in substantial gainful activity;

2) the claimant has a severe medically determinable physical or mental impairment;

3) the impairment meets or equals an impairment which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;

4) the claimant has a residual functional capacity to perform past relevant work; and

5) the claimant has a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.[16]

---

[14] 42 U.S.C. § 423(d)(1)(A).

[15] *Id.* § 423(d)(2)(A).

[16] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988).

The claimant has the burden of establishing the disability in the first four steps.[17] At step five, the burden shifts to the Commissioner to show the claimant is able to perform other work existing in the national economy.[18]

## PROCEDURAL HISTORY

Mr. H. applied for disability insurance benefits on August 7, 2017, alleging disability beginning September 15, 2014.[19] After an unfavorable decision issued on December 26, 2019, Mr. H. appealed.[20] The Appeals Council reversed the decision and ordered a new hearing.[21] After a second administrative hearing, the ALJ issued a decision on April 16, 2021, finding Mr. H. not disabled and denying benefits.[22]

At step two of the sequential evaluation, the ALJ determined Mr. H. had the severe impairments of lumbar and cervical spine degenerative disc disease, obesity, a mood disorder, post-traumatic stress disorder, and an anxiety disorder.[23] At step three, the ALJ found Mr. H.'s impairments did not meet or equal the severity of an impairment listing.[24] With regard to mental limitations, the ALJ found Mr. H. mildly limited in his ability to understand, remember, or apply

---

[17] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[18] *Id.*

[19] (Tr. 333.)

[20] (*Id.* at 190, 297.)

[21] (*Id.* at 213–16.)

[22] (*Id.* at 12–27.)

[23] (*Id.* at 14.)

[24] (*Id.* at 14–15.)

information.[25] And the ALJ concluded Mr. H. was moderately limited in his ability to interact with others, concentrate, persist or maintain pace, and adapt or manage himself.[26]

In light of this, the ALJ determined Mr. H. had the residual functional capacity ("RFC")[27] to perform light work with the following limitations:

- lift or carry twenty pounds occasionally and ten pounds frequently
- stand or walk for four hours and sit for six hours of an eight-hour workday
- never crawl or climb ladders, ropes, or scaffolds but occasionally climb ramps and/or stairs
- occasionally balance on level surfaces, stoop, kneel, push/pull, and crouch
- occasionally tolerate exposure to extreme cold, rough and uneven surfaces, and vibration
- never tolerate exposure to unprotected moving mechanical parts or unprotected heights
- understand, remember, and carry out simple instructions and make simple work-related decisions
- perform routine tasks at a consistent pace, but not a production-rate pace (with strict deadlines)
- tolerate frequent interaction with coworkers and supervisors and occasional interaction with the public
- tolerate occasional changes in a routine work setting with low work pressure[28]

Based on this RFC and the testimony of a vocational expert, the ALJ found Mr. H. unable to perform any of his past, relevant work.[29] But the ALJ concluded jobs existed in significant numbers in the national economy which Mr. H. could perform.[30]

---

[25] (*Id.* at 16.)

[26] (*Id.* at 16–17.)

[27] An individual's RFC is the most the individual can do considering his/her/their limitations. 20 C.F.R. § 404.1545(a)(1).

[28] (Tr. 18.)

[29] (*Id.* at 25.)

[30] (*Id.* at 25–26.)

The Appeals Council denied Mr. H.'s request for review,[31] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. H. makes two interrelated claims of error. First, he argues the ALJ erred by failing to properly analyze the medical opinion evidence of Nancy Foster and Kerri Albanese.[32] Specifically, he contends the ALJ erred in his treatment of the supportability and consistency factors he is required to consider.[33] Second, Mr. H. claims this error impaired the ALJ's RFC determination, leading the ALJ to fail to account for all Mr. H.'s limitations.[34] Because the ALJ legally erred by failing to correctly and adequately address the supportability factor in his review of Dr. Foster's opinions, the decision must be reversed.

"[F]ailure to apply the correct legal standard or to provide [a] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[35] Although an ALJ need not discuss each piece of evidence, the record must show the ALJ "considered all of the evidence."[36] "[I]n addition to discussing the evidence supporting his

---

[31] (*Id.* at 1–6.)

[32] (Opening Br. 16–19, Doc. No. 22.)

[33] (*Id.*); *see also* 20 C.F.R. § 404.1520c(b)(2).

[34] (Opening Br. 19–20, Doc. No. 22.)

[35] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted); *see also Jefferson L. v. Kijakazi*, No. 2:20-cv-00740, 2022 U.S. Dist. LEXIS 43396, at *4 (D. Utah Mar. 10, 2022) (unpublished).

[36] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[37] An ALJ may not ignore evidence.[38]

The Social Security Administration implemented new regulations for evaluating medical evidence for cases filed on or after March 27, 2017, like Mr. H.'s.[39] Under these regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight," to any medical opinions.[40] Instead, the ALJ assesses the persuasiveness of medical opinions and findings by evaluating various factors.[41] Supportability and consistency are the most important factors the ALJ must consider—and the ALJ is required to explain how he considered these two factors.[42] For supportability, the ALJ examines how well medical sources support their own opinions with "objective medical evidence" and "supporting explanations."[43] "[T]here is a difference between [an ALJ] considering evidence and articulating *how* [he] consider[ed] evidence."[44] The question here is whether the ALJ adequately articulated how he considered the supportability of Dr. Foster's opinions sufficient to allow a reviewer to follow his reasoning.[45]

---

[37] *Id.* at 1010.

[38] *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008).

[39] *See Revisions to Rules Regarding the Evaluation of Med. Evidence*, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (hereinafter "*Revisions*") (technical errors corrected by 82 Fed. Reg. 15132 (Mar. 27, 2017)); 20 C.F.R. § 404.1520c.

[40] 20 C.F.R. § 404.1520c(a).

[41] *See id.*

[42] *See id.* § 404.1520c(b)(2).

[43] *See id.* § 404.1520c(c)(1).

[44] *Revisions*, 82 Fed. Reg. at 5858 (emphasis added).

[45] *See* 20 C.F.R. § 404.1520c(b)(2), (c)(1); *see also Langley*, 373 F.3d at 1119 (requiring the ALJ to explain her decision in a manner that is sufficiently specific to be clear to subsequent

Courts have reversed ALJ decisions based on errors in assessing the supportability factor. For instance, in *Beaumont v. Kijakazi*,[46] the court determined reversal was required where the ALJ failed to properly evaluate a medical opinion. Reviewing the ALJ's supportability findings, the court concluded the ALJ "erroneously stated that [a doctor's] opinion was based on the claimant's subjective statements rather than the actual physical examination."[47] In reality, the doctor had completed a physical examination and made specific findings as to the claimant's limited range of motion.[48] The court criticized the ALJ for then using "this erroneous assumption to discount [another doctor's] review of the entire record" and noted that it necessarily affected the ALJ's evaluation of the persuasiveness of both doctors' opinions.[49]

Similar to *Beaumont*, the ALJ in this case erroneously analyzed the supportability factor. The ALJ found Dr. Foster's opinions unpersuasive in large part because he believed she "failed to provide treatment records or progress notes supporting her opinions."[50] Based on this belief, the ALJ determined "there is no basis upon which to evaluate her opinions[,] no matter how many times these opinions are voiced."[51] But the ALJ's statements were factually incorrect. Dr.

---

reviewers); *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. 2006) (unpublished) ("The failure to . . . provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.").

[46] No. CIV-20-87, 2021 U.S. Dist. LEXIS 180979, at *9–11 (E.D. Okla. Aug. 31, 2021) (unpublished), *R&R adopted*, 2021 U.S. Dist. LEXIS 180009 (E.D. Okla. Sept. 20, 2021) (unpublished).

[47] *Id.* at *9.

[48] *Id.*

[49] *Id.*

[50] (Tr. 23.)

[51] (*Id.*)

Foster did provide treatment records.[52] By not acknowledging the existence of these records, the ALJ neglected to account for evidence relevant to Mr. H.'s claim.[53] In addition, the ALJ ran afoul of the requirement to avoid mischaracterizing evidence.[54] He mischaracterized the treatment records in the most serious way: by asserting they did not exist.[55]

By ignoring the treatment notes, the ALJ failed to consider whether they contained objective medical evidence or explanations supporting Dr. Foster's opinions. And he was obligated to assess and articulate the supportability of the doctor's opinions based on the record. The wholesale failure to acknowledge or consider the treatment notes when assessing the supportability factor requires reversal—particularly where the ALJ categorically discounted Dr. Foster's opinion on precisely those grounds.

The Commissioner characterizes the ALJ's supportability error as "irrelevant."[56] The Commissioner argues that because the ALJ also discounted Dr. Foster's opinions on other grounds—such as the inconsistency with other records and the use of checkbox/short answer

---

[52] (*See id.* at 1503–14.)

[53] See *Clifton*, 79 F.3d at 1009 ("The record must demonstrate that the ALJ considered all of the evidence . . . .").

[54] See *Bryant v. Comm'r, Soc. Sec. Admin.*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished).

[55] The fact that the ALJ listed Dr. Foster's treatment records in an exhibit list appended to his decision does not change this. (*See* Tr. 33.) Normally, a court takes "a lower tribunal at its word when it declares it has considered a matter." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Here, the court takes the ALJ at his word that he believed Dr. Foster did not provide any treatment records. To assume otherwise based on the exhibit list alone would directly contradict the ALJ's own statements.

[56] (Def.'s Answer Br. 16, Doc. No. 26.)

forms—the ALJ's "inaccura[cy]" simply does not matter.[57] But the Commissioner provides no legal authority supporting the proposition that it is irrelevant when an ALJ entirely disregards treatment records, erroneously stating they were not provided, then largely bases his supportability findings on this error.[58] The entirely of the Commissioners' other arguments relate to consistency and substantial evidence as a whole; they do not address the supportability factor as applied to Dr. Foster's opinions.

The ALJ's error means he also failed to provide the minimum level of articulation necessary for a proper supportability analysis. ALJs must provide explanations sufficient to permit reviewing courts to follow their reasoning regarding supportability for each medical opinion.[59] The ALJ's failure to substantively discuss Dr. Foster's own treatment records hinders the ability to follow the ALJ's reasoning and to determine whether substantial evidence supports his persuasiveness analysis. There may well be legitimate reasons for discounting Dr. Foster's opinions (even reasons found within her own notes), but based on the ALJ's decision, it is impossible to know. The ALJ's disregard of the medical records underlying Dr. Foster's opinion leaves the court in the arena of guessing and speculation, preventing meaningful review.

The ALJ's approach to this supportability factor is especially troubling in light of the remainder of his analysis of Dr. Foster's opinions. For instance, although the ALJ found Dr. Foster's opinions "inconsistent with the overall evidence of record," he did so in a conclusory

---

[57] (*Id.*)

[58] Instead, the Commissioner cites only to cases addressing harmless error in other contexts. (*See id.* (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Pickup v. Colvin*, 606 F. App'x 430, 433–34 (10th Cir. 2015) (unpublished)).)

[59] *See Jensen*, 436 F.3d at 1165; *see also Jefferson L.*, 2022 U.S. Dist. LEXIS 43396, at *4; 20 C.F.R. § 404.1520c(b)(2).

way.[60] He did not support this finding with citations to contrary evidence in the record or with specific observations.[61] In other words, the ALJ failed to identify, even in general terms, the medical evidence he considered to be at odds with Dr. Foster's opinions. And the ALJ's bare conclusion does not allow the court to follow his rationale. The Commissioner's recitation of the record evidence does not remedy this failure; the Commissioner may not rationalize *post hoc* where the ALJ offered no support for his conclusory statement.[62] In addition, the ALJ's review of Dr. Foster's opinion is so internally inconsistent, it is perplexing. The ALJ found Dr. Foster's opinion both too detailed and too conclusory. Immediately after complaining her "detailed opinions" "go beyond what mid-level providers most often provide," the ALJ criticized Dr. Foster's "checkboxes and short-answer questions."[63]

Taken as a whole, the ALJ's explanation regarding Dr. Foster's opinions does not permit a reviewing court to follow his reasoning or assess its validity. And it would be improper to speculate how the ALJ would have articulated his findings as to supportability if he had acknowledged or reviewed the underlying records.[64] On this record, it is impossible to conclude the ALJ's finding that Dr. Foster's opinions are unpersuasive is supported by substantial evidence.

---

[60] (*See* Tr. 23.)

[61] *See* 20 C.F.R. § 404.1520c(c)(2) (noting the consistency factor requires a comparison with "the evidence from other medical sources and nonmedical sources in the claim").

[62] *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[The] court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

[63] (Tr. 23.)

[64] *See Carpenter*, 537 F.3d at 1267 ("Judicial review is limited to the reasons stated in the ALJ's decision.").

The Commissioner implies any error in the ALJ's approach is harmless.[65] But this case does not meet harmless-error standards. An ALJ's error may be considered harmless "where, based on material the ALJ did at least consider (just not properly)," a court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[66] When an ALJ erroneously discounts or rejects a medical opinion, the error can only be considered harmless "if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."[67] In such a case, the claimant would not be prejudiced because the outcome would be the same, regardless whether the medical opinion were found to be persuasive.[68]

In this case, the outcome would not be the same. Dr. Foster's assessment of Mr. H.'s work-related abilities are inconsistent with the ALJ's RFC determination; the RFC assessment fails to expressly or implicitly account for many of the functional limitations Dr. Foster assessed.[69] It is impossible to say whether the ALJ (or any reasonable administrative factfinder) would have afforded more weight to Dr. Foster's opinions if he had evaluated the supporting treatment notes. But if the ALJ had found Dr. Foster's opinions persuasive, he likely would have assigned Mr. H. a more restrictive RFC. This, in turn, may have resulted in different findings

---

[65] (*See* Answer Br. 16, Doc. No. 26 (citing to harmless-error cases).)

[66] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (noting that the court must "apply harmless error analysis cautiously in the administrative review setting").

[67] *Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014).

[68] *Id.* at 579.

[69] (*Compare* Tr. 16–17 (ALJ's conclusions with regard to Mr. H.'s mental limitations) *with id.* at 23 (ALJ's summary of Dr. Foster's conclusions, reflecting greater limitations).)

regarding Mr. H.'s ability to perform work existing in significant numbers in the national economy. Accordingly, the ALJ's failure to consider Dr. Foster's treatment records in his supportability analysis cannot be considered harmless.

Because the ALJ failed to properly consider the supportability of Dr. Foster's opinions, and his findings were based on a mistaken view of the record, meaningful review of his findings and RFC determination is impossible. Because this error is not harmless, the ALJ's decision must be remanded for further proceedings. Mr. H.'s remaining claims of error are not addressed, where the ALJ's decision is reversed on these grounds. On remand, the evidence should be reconsidered in whole.[70]

## CONCLUSION

For the reasons set forth above, the court REVERSES the Commissioner's decision and REMANDS the case for further proceedings consistent with this order.

DATED this 26th day of September, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[70] *Cf.* HALLEX § I-2-8-18.